**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

TERRY J. HOWARD,  :
                                                                                Case No. 3:03-cv-247
        Plaintiff,

                                                             District Judge Thomas M. Rose
      -vs-                                      Chief Magistrate Judge Michael R. Merz

DONALD H. RUMSFELD, *et al.*,

        Defendants.  :

**REPORT AND RECOMMENDATIONS**

This case is before the Court on Defendants Donald H. Rumsfeld and Defense Contract Management Agency's Motion for Summary Judgment. (Doc. 20). The parties have fully briefed the issues, (*Id.*, Doc. 22, 26), and the matter is ripe for Report and Recommendations.

Plaintiff Terry J. Howard brought this action against Defendants Donald H. Rumsfeld, the Secretary of Defense, the Defense Contract Management Agency, the agency for whom Mr. Howard works, and the United States of America, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* (Title VII). (Doc. 1). Mr. Howard also brought a claim for breach of contract. *Id.* Mr. Howard essentially alleges that Defendants discriminated against him on the bases of race and color when he was not promoted and not reassigned to the position of GS-334-12. Mr. Howard also alleges that by failing to follow the policies and procedures with regard to promotions and reassignments as required by the contract between Defense Contract Administration Services Management Area Dayton and the union to

which he belongs, National Federation of Federal Employees Local 75, Defendants breached that contract.

Defendants deny Mr. Howard's Title VII and breach of contract allegations. Defendants argue that Mr. Howard's Title VII claims were not timely filed, that he failed to exhaust administrative remedies, that he has failed to establish a *prima facie* case, and that he has failed to meet his burden of presenting any evidence of pretext. Defendants also argue that this Court does not have subject matter jurisdiction of Mr. Howard's breach of contract claim. Finally, Defendants argue that the proper party to this action is Donald H. Rumsfeld and that neither the Defense Contract Management Agency nor the United States are proper parties.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-59 (1970). Nevertheless, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327

(1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a Rule 50 motion for judgment as a matter of law. *See, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

> The moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With these principles in mind, for purposes of the present Motion, the facts of this case, construed in the light most favorable to Mr. Howard are as follows.

Mr. Howard has a bachelor's degree in business. Deposition of Terry J. Howard, Mar. 2, 2005, at 25-32, filed Mar. 31, 2005 (Doc. 19). Over time Mr. Howard has taken about 10 to 20 computer courses. *Id.* Mr. Howard has several years of employment with the federal government including employment with the Defense Contract Management Agency ("DCMA"). *Id.* In September, 1994, Mr. Howard was employed as a Computer Specialist, GS-334-11 in DCMA Dayton's Management Support Office ("MSO"). Affidavit of Paulette Whitacre, Mar. 30, 2005 (Doc. 20, Attachment 2). On January 18, 1995, Mr. Howard attended an EEO briefing which was presented to the DCMA Dayton employees by Kim Appleton, the Equal Employment Manager for the east district of DCMA. Affidavit of Kim Appleton, March 30, 2005 (Doc. 21 Attachment 1). In that briefing, Ms. Appleton addressed, among other things, EEO laws and regulations, the EEO complaint process, the time limits for initiating contact with an EEO counselor and the filing of a formal complaint, and employees' rights and responsibilities *Id.*

Since December, 1996, the Dayton MSO has been headquartered at Wright Patterson Air Force Base, Ohio ("WPAFB"). Affidavit of Burl Bruce, Mar. 30, 2005 (Doc. 21, Attachment 6). In addition to its office at WPAFB, the Dayton MSO has subordinate offices located in Cincinnati and Newark, Ohio, and Louisville, Kentucky. *Id.* Until September, 2003, the Dayton MSO also had a subordinate office in Clarksville, Indiana, and effective October, 2003, DCMA Dayton assumed command over similar offices in Cleveland, Ohio, and Pittsburgh, Pennsylvania. *Id.*

Prior to July, 1999, Paulette Whitacre who was, at that time, the Manager of DCMA

4

Dayton's MSO, requested that her supervisor, Burl Bruce, create and fill two (2) additional computer specialist positions in the MSO. Whitacre Affidavit. Ms. Whitacre based her request on the increased workload as well as on the fact that two (2) of the former computer specialists, Sylvia de Alderete, a GS-334-12, and Joe Allen, a GS-334-11, left DCMA Dayton in about November, 1997, and May, 1999, respectively. *Id.* DCMA had not replaced either Ms. de Alderete or Mr. Allen. *Id.*

At the beginning of each year, DCMA is notified of the number of full time employee positions (FTE) that it is authorized for the upcoming year. Deposition of Burl Bruce, Feb. 24, 2005, at 120-21, filed Apr. 22, 2005 (Doc. 23). If DCMA is over its allotment of FTEs, it has to look at excess positions and making reassignments of personnel. *Id.*

In the time frame of July, 1999, there were three (3) computer specialists assigned to DCMA Dayton's MSO. *Id.* Those individuals were Mr. Howard, who is African American and black, Ira Katz, who is Caucasian/white, both of whom were physically located at the WPAFB office, and John Carpanini, who is Caucasian/White and who was in the Clarksville office. *Id.* On about July 18, 1999, Mr. Bruce approved the establishment of the two (2) new GS-12 level Computer Specialist positions which Ms. Whitaker had requested. *Id.*; Bruce Affidavit. In 1999, DCMA Dayton had an excess of Quality Assurance Specialists in its operations group and two (2) vacancies for Computer Specialists in its MSO. *Id.* at 121-24. Bruce Depo. at 123-24. William Slusser and John Durante, two (2) DCMA Dayton employees who were GS-12 Quality Assurance Specialists, were reassigned to the two (2) new GS-12 Computer Specialist positions effective August 1, 1999. Bruce Affidavit; Affidavit of Kathleen Lehman, Mar. 30, 2005 (Doc. 20, Attachment 1). Subsequently, the GS-12 Quality Assurance Specialist positions which Messrs. Slusser and Durante held were abolished. Bruce Affidavit. This reassignment of Messrs. Slusser

and Durante allowed DCMA Dayton to keep within its FTE allocation. Bruce Depo. at 120-24. Following their reassignments to the GS-12 Computer Specialist positions, Messrs. Slusser and Durante occupied work cubicles which were located in the same area as the cubicle that Mr. Howard occupied. Whitacre Affidavit.

Clarksville, Indiana, is located directly across the Ohio River from Louisville, Kentucky, and is approximately 165 miles away from DCMA Dayton's MSO at WPAFB. *Id.* Mr. Carpanini was responsible for providing computer-related services to DCMA Dayton's offices in Clarksville, Louisville, and all other Kentucky offices, as well as the greater Cincinnati area. *Id.*; Bruce Affidavit. Prior to, and at the time of his eventual promotion, Mr. Carpanini was DCMA Dayton's only Computer Specialist in the Clarksville/Louisville area and the only Computer Specialist with the responsibility for the computer systems and associated hardware and software located within his assigned geographical area. *Id.*; Whitacre Affidavit. During this same period of time, Mr. Howard was responsible for providing computer assistance to DCMA Dayton employees located in Area C, Building 30 at WPAFB as well as to various DCMA Dayton employees stationed at various contractor facilities in Ohio. *Id.* In contrast to Mr. Carpanini's responsibilities, Mr. Howard had no responsibility for computer systems in Kentucky nor was he a local area network ("LAN") administrator as was Mr. Carpanini. *Id.*

On or about March 19, 2001, Ms. Whitacre, Mr. Carpanini's first line supervisor, wrote a request to promote Mr. Carpanini to the GS-12 level. *Id.*; Bruce Affidavit. Ms. Whitacre based her request on her perception that Mr. Carpanini was responsible for an increasing amount of GS-12 level work in connection with the maintenance and operation of the servers and LANs at the Louisville and Cincinnati offices. Whitacre Affidavit. Ms. Whitacre also considered Mr.

6

Carpanini's improved ability to independently maintain the servers and LANs in his assigned area as well as the fact that he was the only Computer Specialist stationed in the Clarksville office assigned to handle the computer duties in Kentucky and the greater Cincinnati area. *Id.*

Mr. Bruce approved Ms. Whitacre's request to promote Mr. Carpanini. *Id.*; Bruce Affidavit. In doing so, Mr. Bruce considered the fact that Mr. Carpanini's position was the only Computer Specialist position needed at the Clarksville location. *Id.* Mr. Bruce decided to not make the situation a competitive promotion action because to do so would have exposed DCMA to a potential financial liability for moving expenses. *Id.* It also would have created the need to subsequently reassign Mr. Carpanini to another position if someone else were selected for the Clarksville position. *Id.* Mr. Bruce determined that a promotion by accretion of duties was in DCMA's best interest. *Id.* DCMA East District Office of Human Resources subsequently approved Mr. Carpanini's promotion and he was promoted to the position of Computer Specialist GS-334-12 effective on or about May 20, 2001. *Id.*; Whitacre Affidavit.

During the time that Ms. Whitacre was the Manager of the DCMA Dayton's MSO, specifically from about February, 1988, through January 2, 2004, when she retired from federal service, she was responsible for posting DCMA's Equal Employment Opportunity notices. *Id.* Ms. Whitacre routinely posted those notices on bulletin boards throughout DCMA Dayton's MSO including Area C, Building 30, WPAFB. *Id.* In addition, during the period 1999 through 2001, DCMA Dayton routinely published and posted organizational charts showing the names, team assignments, job series, and grade of all employees listed on the charts. *Id.* Ms. Whitacre was responsible for posting that information in the DCMA Dayton MSO. *Id.*

Mr. Howard first asked to see an EEO counselor on July 31, 2001. Howard Depo. at

48-49. Specifically, he contacted Ruth Verceles, an EEO counselor, by e-mail on July 31, 2001. *Id.* Mr. Howard filed his formal EEO complaint on October 17, 2001. *Id.*; Affidavit of Gary E. Jencson, Mar. 30, 2005 (Doc.20, Attachment 5). In his formal complaint, Mr. Howard alleged that he was discriminated against on the basis of race and color when the DCMA placed Messrs. Slusser and Durante in the new GS-12 Computer Specialist positions and when DCMA promoted Mr. Carpanini to the position of Computer Specialist GS-334-12. Howard Depo. at 50-51.

Mr. Howard understood that when an EEO complaint is filed, the complainant must identify specific incidents of alleged discrimination for investigation. *Id.* at 69-70. He also understood that an individual must complain of the alleged discriminatory incident within forty-five (45) days of its occurrence. *Id.* On June 18, 2001, Mr. Howard became aware of Mr. Carpanini's promotion, *Id.* at 68, and he became aware in August, 2001, that Messrs. Slusser and Durante had been placed in the new GS-12 Computer Specialist positions. *Id.* at 51-55.

On or about January 24, 2003, Mr. Howard filed a motion for leave to amend his administrative complaint. Jencson Affidavit. Mr. Howard sought to add allegations of discrimination relating to John Graziano's selection for the GS-12 Computer Specialist position which became available upon Mr. Durante's August, 2002, retirement and the August 10, 2003, employment of Grady Hale as a GS-12 Computer Specialist at the Cincinnati General Electric Aircraft office. *Id.* The EEOC administrative law judge denied Mr. Howard's motion on the basis of the untimeliness of the motion. *Id.* At no time did Mr. Howard contact an EEO counselor, seek EEO counseling, or file an administrative complaint with respect to Mr. Graziano's selection for the GS-12 Computer Specialist position or with respect to Mr. Hale's employment as a GS-12 Computer Specialist. Appleton Affidavit; *see also,* Howard Depo. at 114-15.

8

Following the completion of the administrative proceedings, Mr. Howard filed his Complaint in this Court on July 10, 2003. (Doc. 1). The present Motion followed.

Title VII makes it unlawful for an employer "to fail to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Phillips v. Cohen,* 400 F.3d 388, 397 (6th Cir. 2005), *citing* 42 U.S.C. §2000e-2.

In the absence of direct evidence of intentional discrimination, under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), a plaintiff must first establish a *prima facie* case of racial discrimination. In order to establish a *prima facie* case, the Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) other similarly situated employees, who were not members of the protected class, were treated differently. *See, McDonnell Douglas,* 411 U.S. at 802; *Betherur v. Aultman Hosp. Ass'n.,* 78 F.3d 1079 (6th Cir. 1996); *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000).

Title VII generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated "in all respects". *Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir. 1992). The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly situated; rather, they must be similar in "all relevant aspects". *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998)(citation omitted)(noting that inflexible criteria for establishing the similarly situated requirement would mean that a plaintiff whose job responsibilities

are unique to his or her position will never successfully establish a *prima facie* case absent direct evidence of discrimination).

Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981). If the defendant offers such a legitimate reason, the burden of production shifts back to the plaintiff to demonstrate that the defendant's reason is not real, but a pretext. *Id.*; *McDonnell Douglas,* 411 U.S. at 804-05. The plaintiff may meet this burden by showing that the stated reasons: (1) had no basis in fact; or (2) were not the actual reasons; or (3) were insufficient to explain the defendant's actions. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1085 (6th Cir. 1994). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case and inferences properly drawn therefore on the issue of whether the defendant's explanation is pretextual. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143 (2000)(citations omitted).

Title VII is the exclusive remedy for discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976). Federal employees who allege that they have been victims of discrimination must exhaust their administrative remedies. *Dixon v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004)(citations omitted). An

aggrieved person must initiate contact with a counselor within forty-five (45) days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within forty-five (45) days of the effective date of the action. 29 C.F.R. §1614.105(a)(1). The regulations provide that the time limit for counselor contact may be extended under certain circumstances including when the complainant did not know that the discriminatory event had occurred. 29 C.F.R. §1641.105(a)(2)

As an initial matter, the Court notes that in his Memorandum in Opposition to the present Motion, Mr. Howard did not address three of Defendants' arguments. First, Mr. Howard does not dispute that he failed to exhaust his administrative remedies with respect to Mr. Graziano's selection for the GS-12 Computer Specialist position or with respect to Mr. Hale's employment as a GS-12 Computer Specialist. (Doc. 22). Second, Mr. Howard does not dispute Defendants' argument that the only proper Defendant is Donald H. Rumsfeld, the Secretary of the Department of Defense. *Id.* Third, Mr. Howard failed to address Defendants' argument that his breach of contract claim in Court II of his Complaint must be dismissed for lack of jurisdiction. *Id.* Mr. Howard has clearly abandoned those claims.

The first issue which this Court will address is exhaustion.

First, as noted above, it appears that Mr. Howard has abandoned his claims with respect to Mr. Graziano's selection for the GS-12 Computer Specialist position and with respect to Mr. Hale's employment as a GS-12 Computer Specialist. Nevertheless, the Court notes that Mr. Howard did not contact an EEO counselor, seek EEO counseling, or file an administrative complaint with respect to Mr. Graziano's selection for the GS-12 Computer Specialist position or with respect to Mr. Hale's employment as a GS-12 Computer Specialist. In addition, the uncontradicted testimony is that the EEOC administrative law judge denied Mr. Howard's motion to amend his

complaint to include his alleged claims with respect to Messrs. Graziano and Hale. Indeed, Mr. Howard has admitted that he did not go through any administrative process with respect to any claims related to the employment status of Mr. Graziano or Mr. Hale. This Court concludes that because Mr. Howard admittedly failed to properly exhaust his administrative remedies with respect to any alleged claims involving Messrs. Graziano's and Hale's employment , Defendants are entitled to judgment as a matter of law as to those claims.

The next issue is whether Mr. Howard properly exhausted his administrative remedies with respect to his claims surrounding Messrs. Slusser and Durante's selections for the GS-12 Computer Specialists positions.

As an initial matter, Mr. Howard alleges in his unsworn "Amended Affidavit on Timeliness" that he first learned on August 28, 2001, and February 4, 2002, respectively, that DCMA had placed Messrs. Durante and Slusser in the GS-12 Computer Specialist positions. Amended Affidavit of Terry Howard, May 5, 2005 (Doc. 27, Attachment 5). Yet, the evidence establishes that Mr. Howard first contacted the EEO counselor with allegations of discrimination revolving around the personnel actions involving Mr. Durante and Mr. Slusser on July 31, 2001. In other words, Mr. Howard filed an administrative complaint alleging a discriminatory action prior to his learning of that action. How can this be? Nevertheless, giving Mr. Howard the benefit of the doubt, at this stage of the litigation, there is a question of fact as to whether Mr. Howard timely contacted the EEO counselor as required by the regulations. As noted above, in the federal employment arena, the regulations require that a complainant contact a counselor within forty-five (45) days of, in this case, the effective date of the personnel action which the complainant alleges was discriminatory. The regulations also provide that the forty-five (45) day limit may be extended

if the complainant did not know that the discriminatory event occurred. A question remains as to whether Mr. Howard knew, or should have known, that Messrs. Slusser and Durante were placed in the GS-12 Computer Specialist positions effective August 1, 1999.[1] Specifically, while Mr. Howard alleges that he did not learn of the August 1, 1999, personnel actions until August 28, 2001, and July 2002, there is evidence that Mr. Howard did know or should have known about the personnel actions long before he claims he did. For example, the evidence indicates that the DCMA employees met on a regular basis to discuss work-related matters including assignments, that the employees worked in rather close proximity to each other, that the organizational chart which indicated DCMA Dayton DMO personnel's job duties and grades was posted, and that Mr. Howard noticed that Messrs. Slusser and Durante were performing GS-12 level work. Quite simply, the resolution of this issue is dependent on the credibility of the witnesses, a matter that is within the province of a jury[2]. The Court will, however, for purposes of the present Motion only, assume that Mr. Howard timely contacted an EEO counselor and properly exhausted his administrative remedies with respect to his claims allegedly arising out of Mr. Slusser's and Mr. Durante's selection for the GS-12 Computer Specialist positions. Accordingly, the Court turns to Mr. Howard's substantive Title VII claims.[3]

---

[1] Had Mr. Howard known, or if he should have known of the August 1, 1999, personnel action, then he was required to contact an EEO counselor not later than about September 15, 1999. The evidence establishes, however, that he did not contact a counselor until at least July 31, 2001, almost two (2) years after the effective date of the personnel actions.

[2] Having reached this conclusion, the Court need not address the argument of whether Defendants waived the timeliness requirement.

[3] There does not appear to be any dispute as to the exhaustion of administrative remedies as to any claims Mr. Howard brings with respect to Mr. Carpanini's promotion to GS-12. However, the Court will also assume that Mr. Howard timely and properly exhausted his administrative remedies as to any claim based on Mr. Carpanini's promotion.

At first glance, Mr. Howard's claim as to Messrs. Slusser and Durante's selections appears to be a "failure to promote" claim. In the absence of direct evidence, a Title VII plaintiff may set forth a *prima facie* case of discrimination for failure to promote by showing that (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Sutherland v. Michigan Dep't. Of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003)(citation omitted). In the present case, it is undisputed that Mr. Howard did not apply for any of the GS-12 positions or that he was considered for and denied a GS-12 position. Indeed, DCMA Dayton MSO did not post the availability of the positions or invite individuals to apply for the positions. Therefore, this matter is better suited to a disparate treatment analysis and the Court looks to the *McDonnell Douglas* framework, *supra.*

There does not appear to be any dispute that Mr. Howard is a member of a protected class: he is African-American and black. He therefore satisfies the first prong of the *McDonnell Douglas* framework for establishing a *prima facie* case. At this juncture, the Court will assume that Mr. Howard has suffered an adverse employment action –non-selection – and that he was qualified for the GS-12 positions and that he therefore satisfies the second and third *McDonnell Douglas* prongs. Turning to the "similarly situated" prong, this Court concludes that Mr. Howard has failed to satisfy that requirement.

As noted above, prior to being assigned to the GS-12 Computer Specialist positions, both Mr. Slusser and Mr. Durante were GS-12 Quality Assurance Specialists. At that time, Mr. Howard, however, was a GS-11 Computer Specialist. In other words, Mr. Howard was at a GS grade level that was lower than Messrs. Slusser and Durante's levels. The personnel actions

concerning Mr. Slusser and Mr. Durante about which Mr. Howard complains were essentially lateral reassignments, a reassignment for which Mr. Howard was not qualified because he was a GS-11. In any event, this Court concludes that under these facts, Mr. Howard, a lower graded employee is not similarly situated with Mr. Slusser or Mr. Durante who were higher graded employees. *See Ball v. Tanoue, Chairman, FDIC*, 133 F. Supp.2d 84 (D.D.C. 2001), abrogation on other grounds recognized in *Allen v. Perry,* 279 F. Supp.2d 36 (D.D.C. 2003). Messrs. Slusser and Durante were not similarly situated to Mr. Howard for purposes of establishing a *prima facie* case of Title VII discrimination.

The Court reaches a similar conclusion as to Mr. Howard's claim which allegedly arises out of the personnel action taken with respect to Mr. Carpanini. Specifically, Mr. Carpanini worked in the Clarksville, Indiana, office while Mr. Howard worked in the WPAFB office. In addition, Mr. Carpanini was DCMA Dayton's only Computer Specialist in the Clarksville/Louisville area and the only Computer Specialist with the responsibility for the computer systems and associated hardware and software located within his assigned geographical area. In contrast, Mr. Howard was one of at least three (3) Computer Specialists in the DCMA Dayton MSO located at WPAFB. Further, unlike Mr. Howard, Mr. Carpanini's responsibilities included performing duties as a LAN administrator. As with Mr. Slusser and Mr. Durante Mr. Carpanini was not similarly situated to Mr. Howard for purposes of establishing a *prima facie* case of discrimination under Title VII.

For purposes of complete analysis, the Court will assume for the sake of argument that Mr. Howard had succeeded in establishing a *prima facie* case of discrimination. As noted above, the burden shifts to the Defendants to articulate legitimate, nondiscriminatory reasons for the

15

personnel actions about which Mr. Howard complains.

With respect to the personnel actions involving Mr. Slusser and Mr. Durante, Defendants rely primarily on financial reasons for the actions it took. Specifically, as noted above, in 1999, with respect to its FTE allocations, DCMA Dayton had an excess number of Quality Assurance Specialists in its operations group while it also had two (2) vacancies in the MSO. By reassigning Mr. Slusser and Mr. Durante from their respective GS-12 Quality Assurance Specialist positions into the GS-12 Computer Specialist positions, DCMA Dayton was able to stay within its FTE allotment while at the same time it could meet its work demands. Under these facts, Defendants have articulated legitimate, nondiscriminatory reasons for the personnel actions with respect to Messrs. Slusser and Duranate.

Defendants have also articulated legitimate, nondiscriminatory reasons for its action with respect to Mr. Carpanini. Specifically, and as noted above, Mr. Carpanini was the only Computer Specialist stationed in the Clarksville, Indiana, office and he was the only one assigned to handle the computer duties in Kentucky and the greater Cincinnati area. Further, Mr. Carpanini was a LAN administrator and was independently maintaining the servers and LANs in his assigned area. Finally, Defendants again rely on financial reasons for the action involving Mr. Carpanini. Defendants' position is that by upgrading Mr. Carpanini DCMA Dayton did not incur moving expenses for someone new to fill the position. In addition, DCMA Dayton was able to avoid possibly having to place Mr. Carpanini in another position which would also result in relocation expenses for DCMA.

It is now Mr. Howard's burden to establish that the reasons Defendants have articulated are a pretext for discrimination. As noted *supra*, Mr. Howard may meet this burden by

showing that the stated reasons: (1) had no basis in fact; or (2) were not the actual reasons; or (3) were insufficient to explain the defendant's actions.

In addressing the reasons Defendants articulated for its complained of personnel actions, Mr. Howard argues that "none of the reasons presented by Defendants constitutes a reason why [he] should not have gotten a GS-12 upon the departure of Sylvia de Alderete." (Doc. 22 at 14)(emphasis in original). Mr. Howard's lengthy argument on this point is somewhat misplaced. Defendants' burden is not to explain why it did not put Mr. Howard in a GS-12 position; rather, it their burden is to articulate why it took the actions it did take. *See McDonnell Douglas, supra.* Mr. Howard, has not come forth with any *evidence* which tends to show that Defendants' articulated reasons had no basis in fact, were not the actual reasons, or were insufficient to explain Defendants' actions. Accordingly, his Title VII claim fails.

As noted above, it appears that Mr. Howard has abandoned his breach of contract claim. This Court will, however, briefly address that claim.

The crux of Mr. Howard's contract claim is that DCMA Dayton breached the collective bargaining agreement (CBA) between it and the National Federation of Federal Employees Local 75, the union to which he belongs.

As argued by Defendants in their Memorandum in Support of their present Motion, the Civil Service Reform Act of 1978, 5 U.S.C. §7101, *et seq.,* (CSRA) established a comprehensive system for reviewing personnel actions involving federal employees. The CSRA provides the exclusive remedy by which federal employees may bring such action. Unless the CSRA sanctions judicial challenges to personnel actions in the federal employment setting, judicial challenge is foreclosed. *Cf., Blade v. U.S. Bankruptcy Court*, 109 F. Supp.2d 872 (S.D.Ohio 1998), *aff'd* 2001

WL 1355799 (6th Cir. 2001).

Section 7121(a)(1) of Title 5 provides that the negotiated grievance procedures set forth in a collective bargaining agreement are the exclusive administrative procedures for resolving grievances that fall within its coverage. Section 7121(b)(1) provides for binding arbitration for any grievance not settled under the negotiated procedure.

Mr. Howard is admittedly a member of a Union that has a CBA with DCMA Dayton. Accordingly, he is limited to the procedures contained in that agreement for resolving his alleged grievances and his judicial challenge is foreclosed. Defendants are entitled to judgment as a matter of law on that claim.

Finally, although it is unopposed, the Court will also briefly address Defendants' Motion as it relates to the proper Defendant in this matter.

In *Hancock v. Egger,* 848 F.2d 87, 89 (6th Cir. 1988), the Sixth Circuit determined that the Secretary of the Treasury, as head of the Treasury Department was the proper defendant in a suit alleging racial discrimination against the IRS. In doing so, the Court construed 42 U.S.C. §2000e-16(c), which mandates who may be a proper defendant in civil actions brought by federal employees to enforce rights under Title VII, as requiring plaintiffs suing subunits of cabinet-level departments name the relevant department head as defendant. *Mulhall v. Ashcroft,* 287 F.3d 543 (6th Cir. 2002)(holding that the FBI was not a proper defendant in a Title VII action and that John Ashcroft, as Attorney General and head of the Justice Department was the proper defendant).

Similarly, in the present case, the proper Defendant is Donald H. Rumsfeld as Secretary of the Department of Defense. Neither the Defense Contract Management Agency nor the United States are proper defendants and they should be dismissed.

It is therefore recommended that Defendants Defense Contract Management Agency, the United States of America, and Donald H. Rumsfeld, Secretary of Defense's Motion for Summary Judgment, (Doc. 20), be granted. Judgment should be entered in favor of Defendants and against Plaintiff Terry J. Howard dismissing the within Complaint with prejudice.

June 3, 2005.

s/ **Michael R. Merz**  
Chief United States Magistrate Judge

J:\Howard_MSJ.wpd

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).